**MICHIGAN WISCONSIN PIPE LINE COMPANY, Appellant,**

v.

**IOWA STATE BOARD OF TAX REVIEW, Appellee.**

No. 84–1240.

Supreme Court of Iowa.

May 22, 1985.

Rehearing Denied June 24, 1985.

D.H. Sitz and Terry M. Giebelstein of Lane & Waterman, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Gerald A. Kuehn, Asst. Atty. Gen., and R. Douglas Lackey of Corlew, Smith & Wright, Atlanta, Georgia, for appellee.

Considered by McCORMICK, P.J., and McGIVERIN, SCHULTZ, CARTER, and WOLLE, JJ.

McCORMICK, Justice.

This appeal involves a pipeline company's challenge to the director of revenue's valuation of its Iowa property pursuant to Iowa Code chapter 438 (1979). Respondent Iowa State Board of Tax Review upheld the valuation after hearing the challenge as a contested case. Petitioner Michigan Wisconsin Pipe Line Company then obtained district court review in a judicial review proceeding. When the district court affirmed the board, petitioner appealed. The questions concern burden of proof, correctness of the director's valuation method, and constitutionality of the valuation on equal protection and due process grounds. We affirm the district court.

This case is subject to the administrative procedure act. *See* Iowa Code § 428.31 (1979). Like the district court we thus exercise the power of judicial review conferred by section 17A.19(8) to correct assigned errors of law on the part of the board. *See Lefebure Corp. v. Iowa Department of Job Service*, 341 N.W.2d 768, 770 (Iowa 1983). The courts do not sit to decide issues of fact in cases like this. The board is entrusted with sole authority to make those decisions.

Petitioner challenges the January 1, 1980 valuation of its taxable Iowa property in the amount of $37,533,000. The questions are whether the board applied an incorrect burden of proof standard, erred in failing to require the valuation to be based on comparable sales, wrongfully approved the taxation of intangible property, mistakenly allowed taxation of petitioner's property outside of Iowa, and violated the equal protection and due process clauses of the Iowa and United States Constitutions by permitting a discriminatory valuation approach.

I. *Burden of proof.* The parties sharply disagree concerning allocation of the burden of proof before the board. Proceedings before the board of tax review are to conform to section 421.1(4) and chapter 17A. *See* Iowa Code § 429.2 (1985). Section 421.1(4) provides in relevant part that on a taxpayer's appeal the board is to "review the record evidence and [decision] and ... expeditiously affirm, modify, reverse or remand the [decision]." Chapter 17A does not dictate how the burden of proof is allocated. That issue is determined by the legal authority under which the hearing is held. *See* § 17A.12(2)(b).

Petitioner contends that the board erred in refusing to hold that the department had the burden of proof to uphold the director's valuation once petitioner presented evidence by two disinterested witnesses placing the market value of its property below the market value determined by the director. In urging this contention, petition-

er cites Code subsection 441.21(3), which provides as follows:

3. "Actual value", "taxable value", or "assessed value" as used in other sections of the Code in relation to assessment of property for taxation shall mean the valuations as determined by this section; however, other provisions of the Code providing special methods or formulas for assessing or valuing specified property shall remain in effect, but this section shall be applicable to the extent consistent with such provisions. The assessor and department of revenue shall disclose at the written request of the taxpayer all information in any formula or method used to determine the actual value of the taxpayer's property.

The burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, inequitable or capricious; however, in protest or appeal proceedings when the complainant offers competent evidence by at least two disinterested witnesses that the market value of the property is less than the market value determined by the assessor, the burden of proof thereafter shall be upon the officials or persons seeking to uphold such valuation to be assessed.

Iowa Code subsection 441.21(6) (1985) provides in part that for valuations established as of January 1, 1980, "property valued by the department of revenue pursuant to chapters 428, 433, 436, 437, and 438 ... shall be assessed at a percentage of its actual value." Petitioner's property, valued as of that date pursuant to chapter 438, thus was to be assessed in accordance with the percentage established by a prescribed statutory formula.

In asserting the applicability of the burden of proof allocation in section 441.21(3), petitioner relies on the language in section 438.13 of the pipeline tax chapter which provides in relevant part:

The [pipeline company] property shall be valued at its actual value, and the assessments shall be made upon the taxable value of the entire pipeline property within the state, except as otherwise pro-

vided, and the actual and taxable value so ascertained shall be assessed as provided by section 441.21....

Petitioner points out that the burden-shifting language in subsection 441.21(3) was added in the same statutory amendment that put the language in section 438.13 requiring pipeline property to be assessed as provided by section 441.21. The amendment also required all assessors and assessing bodies, including the state tax commission and its successors, to comply with the enactment. *See* 1967 Iowa Acts, ch. 354, §§ 1, 4 and 12. From these circumstances petitioner argues that the General Assembly adopted the new subsection 441.-21(3) burden of proof allocation in challenges to pipeline valuations made pursuant to chapter 438. This argument has at least three flaws.

First, section 438.13 expressly refers only to the *assessment* requirements of section 441.21. It does not refer to *valuation*. Therefore, insofar as relevant here, the provision incorporates only the direction in section 441.21(6) that the pipeline property was to be assessed as of January 1, 1980, at a prescribed percentage of its actual value.

Second, the conclusion that the language inserted in section 438.13 by the 1967 amendment had a broader meaning is refuted by the fact that the new language was merely substituted for prior language of similar import. Before the amendment, section 438.13 provided that "the taxable value shall be determined by taking sixty percent of the actual value so ascertained, as is provided by section 441.21." *See* Iowa Code § 438.13 (1966). The amendment did not broaden the preexisting limited reference to section 441.21.

▮ Finally, even the language of subsection 441.21(3) does not support petitioner's argument. The legislature has distinguished between assessors and the department of revenue throughout chapter 441, including subsection 441.21(3). The burden of proof allocation language in subsection 441.21(3) is expressly applicable only to "market value determined by the asses-

sor." Section 441.54 provides that the term "assessor" means "the county and city assessor, as the case may be." Moreover, the burden of proof provision refers to protest and appeal proceedings. Those references track with section 441.37, concerning protests of local assessments, and section 441.38, concerning appeals to district court from boards of review. Furthermore, section 441.39, affecting only those appeals, provides for a district court trial de novo in which "there shall be no presumption as to the correctness of the valuation of assessment appealed from." As previously pointed out, valuations and assessments by the director of revenue are subject to different and independent review provisions. Proceedings before the board of tax review and in district court are governed by the administrative procedure act.

■ The state board suggests several reasons why the General Assembly has not provided for shifting the burden of proof in challenges to director of revenue valuations. Because we believe it is sufficient to determine that the allocation of burden of proof in subsection 441.21(3) does not apply, we need not explore those reasons. We conclude that the board did not err in refusing to assign the burden of proof to uphold the assessment to the department.

II. *Comparable sales.* Section 441.-21(3) requires that actual value for purposes of valuation like that prescribed in chapter 438 "shall mean the valuations as determined by [section 441.21]...." Pursuant to subsection 441.21(1)(b), actual value is "fair and reasonable market value." We will assume, without deciding, that this provision also brings into play the familiar priority and distinction between the "sales prices" and "other factors" approaches to valuation. *See* § 441.21(2); *Equitable Life Insurance Co. v. Board of Review*, 281 N.W.2d 821, 823 (Iowa 1979). We reserve the question, however, whether the department's valuation is affected by this provision of section 441.21. The question exists because of specific language in section 438.13 that may indicate otherwise:

In assessing said pipeline company and its equipment, the director of revenue shall take into consideration the gross earnings and the net earnings for the entire property, and per mile, for the year ending December 31 preceding, and any and all other matters necessary to enable the director to make a just and equitable assessment of said pipeline property.

The department independently has given priority to the sales prices approach by regulation. *See* 730 Iowa Admin.Code 77.3.

Petitioner contends that comparable sales existed in the present situation and that the board erred as a matter of law in not limiting the valuation of its property to the sales prices approach. In an effort to establish market value of its pipeline property through use of comparable sales, petitioner offered evidence of sales of segments of pipeline property in several states, including one in Iowa. Other than being property of the same nature, the only common characteristic of the properties shown in the evidence was the fact all were subject to Federal Energy Regulatory Commission (FERC) regulation. The purport of the evidence was that the other properties generally were sold at a price equal to their FERC rate base, which constitutes depreciated original cost, because current FERC general policy was to allow only that portion of any purchase price to be included in a purchaser's rate base. Petitioner's Iowa pipeline had a depreciated original cost of $11,679,511.

In rejecting petitioner's contention that the sales were comparable, the board found that the common characteristic of FERC regulation did not demonstrate comparability. The board reasoned in part that market value was not limited by law to original depreciated cost and that FERC was not limited by law to allowing only depreciated original cost in a purchaser's rate base. *See, e.g., Public Service Co. of New Hampshire v. Town of Ashland*, 117 N.H. 635, 377 A.2d 124 (1977); *Cities Service Gas Company*, 4 FERC Rep. ¶ 61, 268 (September 1, 1978). The board also relied on

testimony of other witnesses who said that the sales were not comparable or that they knew of no comparable sales.

The record thus contained evidence of alleged comparable sales and evidence that the sales were not comparable. As with evidence generally, the weight to be given the testimony was for the trier of fact. *See Business Ventures, Inc. v. Iowa City,* 234 N.W.2d 376, 384 (Iowa 1975). Petitioner contends the board erred in failing to limit the valuation to the sales prices approach. We can interfere only if an assigned ground of error under section 17A.19(8) has been established. No provision of section 17A.19(8) is cited or argued. The contention ultimately rests on disagreement with the board's view of the evidence. No error of law has been established, and therefore no basis exists for judicial intervention. *See Northwestern Bell Telephone Co. v. Iowa State Commerce Commission,* 359 N.W.2d 491, 496 (Iowa 1984).

III. *Taxation of intangible property.* Petitioner alleges the board erred by permitting assessment of its intangible property. Section 438.13 requires the department to assess "the taxable value of the entire pipeline within the state, except as otherwise provided, and the actual and taxable value so ascertained ... shall include the rights of way, easements, the pipelines, stations, grounds, shops, buildings, pumps and all other property, real and personal exclusively used in the operation of such pipeline." We note first that the statute does not distinguish between tangible and intangible personal property. We will assume, however, that only tangible property in Iowa can be assessed.

The fundamental problem with petitioner's allegation is that it fails to distinguish between an appraisal method and the property being appraised. Section 438.13 identifies the property to be appraised and vests the department of revenue with discretion to determine how it is to be valued.

Pursuant to this authority, the department has adopted regulations incorporating four valuation approaches. One is the use of comparable sales, and the others are unit approaches to value called the stock and debt approach, income capitalization approach, and the cost approach. *See* 730 Iowa Admin.Code 77.3. When unit value approaches are used, a portion of the company's unit value is to be allocated to Iowa. *Id.* at 77.8. Petitioner contends that the department impermissibly included valuation of intangible property in using the stock and debt approach in this case.

The stock and debt approach involves estimating the market value of the operating property of the company. *See* 730 Iowa Admin.Code 77.4(1). Operating property is property used and needed to operate the business. Non-operating property is other property. Operating property obviously includes intangibles such as cash because cash is necessary for carrying on the business. The first step in the stock and debt approach is to determine the market value of the company as a whole as a going concern.

Next a percentage allocation for Iowa is ascertained. The purpose is to determine the Iowa share of the company's operating value. In the present case, the department used a two factor formula to arrive at an allocator. The first factor, weighted at seventy-five percent, compared the undepreciated cost of the company's investment in Iowa to the undepreciated cost of petitioner's total investment. The second factor, weighted at twenty-five percent, compared gross operating revenues in Iowa with total gross operating revenues. The object, according to the evidence, was to determine the value of the Iowa pipeline property as part of a going concern.

Intangible property is considered in determining the market value of the company as a whole because it bears on the company's value as a going concern. Intangible property located in another state may have an impact on the market value of tangible Iowa property as a going concern. *See Crane Co. v. City Council of City of Des Moines,* 208 Iowa 164, 225 N.W. 344 (1929). Principles involved in this approach

to valuation of tangible in-state property have been discussed as follows:

Established principles are not lacking in this much discussed area of the law. It is of course settled that a State may impose a property tax upon its fair share of an interstate transportation enterprise.... That fair share may be regarded as the value, appropriately ascertained, of tangible assets permanently or habitually employed in the taxing State, including a portion of the intangible, or "going-concern," value of the enterprise.... The value may be ascertained by reference to the total system of which the intrastate assets are a part. As the Court has stated the rule, "the tax may be made to cover the enhanced value which comes to the [tangible] property in the State through its organic relation to the [interstate] system." ... Going-concern value, of course, is an elusive concept not susceptible of exact measurement.... As a consequence, the States have been permitted considerable latitude in devising formulas to measure the value of tangible property located within their borders.... Such formulas usually involve a determination of the percentage of the taxpayer's tangible assets situated in the taxing State and the application of this percentage to a figure representing the total going-concern value of the enterprise.... A number of such formulas have been sustained by the Court, even though it could not be demonstrated that the results they yielded were precise evaluations of assets located within the taxing State.... (Citations omitted).

*Norfolk & Western Ry. Co. v. Missouri State Tax Commission*, 390 U.S. 317, 323–24, 88 S.Ct. 995, 1000, 19 L.Ed.2d 1201, 1206–07 (1968). A state thus may look beyond its borders, even to intangible property, in order to determine the market value of tangible property within its borders. *Id.* n. 6.

The department used the stock and debt approach merely as an indicator of the market value of the Iowa pipeline property.

The value of intangible property was considered only insofar as it affected the value of the Iowa tangible assets as part of a going concern. The resulting valuation was of tangible assets only. Therefore the board did not allow assessment of intangible assets as alleged.

IV. *The unit value approach.* Petitioner also attacks the use of the two factor allocation formula in this case. It argues that depreciated rather than undepreciated costs should have been used in arriving at the first factor. Petitioner's Iowa property was seventy-three percent depreciated whereas its entire property was only forty-three percent depreciated. If the factor advocated by petitioner had been used, a lower allocator for Iowa would have resulted.

Petitioner also argues that the second allocation factor should not have been used at all because it had the effect of enhancing the value of Iowa property based on non-pipeline property outside of Iowa.

A difference of opinion concerning the proper method of allocation exists in the evidence. Petitioner had the burden to establish that the method employed by the department produced a grossly disproportionate result. *See International Harvester Co. v. Evatt*, 329 U.S. 416, 422–23, 67 S.Ct. 444, 447, 91 L.Ed. 390, 395 (1947). The board found petitioner did not sustain this burden. We cannot say the board was obliged as a matter of law to hold to the contrary.

Moreover, in its attack on the second factor in the allocation formula, petitioner ignores the principle that the department was entitled to value the Iowa property as part of a going concern and not as a segment of property severed from the system as a whole. *See City Council of Marion v. Cedar Rapids and Marion Ry. Co.*, 120 Iowa 259, 265–66, 94 N.W. 501, 503 (1903). Issues of judgment entrusted to the agency are involved.

We find no legal error in petitioner's attack on the use of the unit value approach.

V. *The constitutional question.* Petitioner contends the valuation infringes its right to equal protection and due process of law under Article 1, sections 6 and 9 of the Iowa Constitution and the fourteenth amendment of the United States Constitution. The principal basis for this contention is the fact that the department used three approaches to valuation of petitioner's property whereas it used only a cost approach to valuation of eight other pipeline companies. The record shows the three approaches were also used for two other companies, the cost and stock and debt approaches were used for one company and the income and stock and debt approaches for another. The cost approach was weighted at only ten percent in the present assessment, the income approach at fifteen percent and the stock and debt approach at seventy-five percent. Petitioner's argument is that if the cost approach had been used alone as it was for the eight other companies the valuation would have been $11,679,511 instead of $37,533,000.

The department's response is that it used every available indicator of value for every company. Because stock and debt data were not available for some companies, that method could not be used in valuing their property. The income method was not used for companies that transported their own products. The cost approach alone was used only when the other methods could not be used. The different approaches were dictated by the availability of data rather than from classification of the companies differently for valuation purposes. The department's purpose was to arrive at market value of Iowa pipeline property for all the companies.

Moreover, evidence was received that the market value of most companies in the industry was below book value. On the average therefore, because the cost method is tied to book value, the cost approach would result in a higher value than use of the stock and debt approach which is tied to market factors. In this case the stock and debt approach resulted in a higher valuation than resulted from the cost approach. The department suggests that this is because petitioner was among the exceptional companies whose market value was higher than its book value. Petitioner did not produce any evidence to show that the companies for which the cost approach was used were assessed at less than actual value. Thus the record shows petitioner's property would have a lesser valuation if the cost approach had been used, but it does not provide a basis for comparing the valuation from the stock and debt approach with the valuation of other properties from the cost approach.

Petitioner contends the denial of equal protection is established by the disparity of valuation methods. An equal protection violation can be established, however, only by proof of disparity in the resulting assessments. *See United National Corp. v. Hennepin,* 299 N.W.2d 73, 76 (Minn.1980) ("To determine whether a property has been unequally assessed, its actual market value and real estate assessment must be compared with the market value and real estate tax assessments of other properties."). Moreover, the taxpayer must prove that the resulting disparity was caused by intentional or arbitrary or systematic undervaluation of the other properties or overvaluation of the taxpayer's property. *Id.; Southland Mall, Inc. v. Garner,* 455 F.2d 887, 879 (6th Cir.1972).

Such inequity was found in *Chicago and North Western Railway Co. v. Iowa State Tax Commission,* 257 Iowa 1359, 1372, 137 N.W.2d 246, 254 (1965). In that case the commission had used a uniform method to obtain actual values of railroad property but discounted those values by different percentages for assessment purposes. The denial of equal protection occurred because of the arbitrary application of different percentage discounts causing disparity in the resulting assessments. No such disparity has been shown here.

In the present case, different valuation methods were used but with the common objective of determining actual value. Each approach was merely an indicator of that value. Each unit value appraisal

method is an accepted appraisal technique and, in theory, each would assist the department in accomplishing its objective.

The department offered evidence that the stock and debt approach is the most reliable indicator of value. Petitioner offered evidence that the cost approach is more accurate for regulated pipeline companies. The department showed how the stock and debt method was applied in this case. Petitioner offered evidence that the department made several errors in judgment in applying that method. Issues of fact thus were created for the agency to resolve in determining the actual value of petitioner's property. Those issues were decided in favor of the department.

It is not for us to say how we would have resolved those issues. The factfinder might well have found the department's valuation to be too high. Petitioner's problem, however, is that its evidence at most raises issues of mistakes in judgment by the department, and those issues were resolved against petitioner. Even if mistakes in judgment occurred, they do not alone establish a denial of equal protection. The evidence does not show an intentional or arbitrary or systematic undervaluation of the other properties or overvaluation of petitioner's property.

In a second branch of its equal protection argument, petitioner contends use of the stock and debt approach valued property not included in the cost approach. This argument fails for the same reasons as petitioner's argument concerning alleged valuation of intangible property. The stock and debt approach considers property not involved in the cost approach only as a means of arriving at the going concern value of the tangible property in Iowa. No equal protection denial occurs.

Petitioner's due process argument is based on a claim that the assessment was confiscatory. The argument depends on the same evidence and reasoning as the equal protection argument, and we reject it on the same grounds.

We have considered all of petitioner's contentions and arguments, whether specifically addressed or not, and we find them to be without merit. The district court did not err in affirming the valuation.

AFFIRMED.