# IN THE SUPREME COURT OF IOWA

No. 20–0902

Submitted November 16, 2021—Filed December 17, 2021

**POLK COUNTY ASSESSOR RANDY RIPPERGER,**

Appellant,

vs.

**IOWA PUBLIC INFORMATION BOARD,**

Appellee.

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

The Polk County Assessor appeals the district court judgment affirming the Public Information Board decision that he violated the Open Records Act. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Oxley, J., joined. Mansfield, J., filed an opinion concurring in part and dissenting in part. Appel, McDonald, and McDermott, JJ., took no part in the consideration or decision of the case.

John P. Sarcone, County Attorney, and Meghan L. Gavin (argued), Assistant County Attorney, for appellant.

Thomas J. Miller, Attorney General, and Emily Willits (argued), Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether a confidentiality provision in Iowa's Open Records Act allows a county assessor to refuse to disclose a list of property owners who asked that their names be removed from the public name search function on the assessor's website. Owners make such requests to attain a measure of privacy for their home addresses. The list includes police officers, prosecutors, judges, and crime victims who want to make it harder for criminals or harassers to find out where the owner lives. A reporter sought the list and the Polk County Assessor withheld it as exempt from disclosure under Iowa Code section 22.7(18) (2017), which protects certain voluntary communications from persons "outside of government" that would be deterred if publicized. The reporter filed a complaint with the Iowa Public Information Board (Board) under Iowa Code chapter 23. The Board, after contested case proceedings, ordered the Assessor to disclose the list. On judicial review, the district court affirmed the Board's decision. We retained the Assessor's appeal.

On our review, we agree with the Board that the Assessor has the burden to establish that the list, a public record, is exempt under section 22.7(18). But we agree with the Assessor that the statutory exemption applies and the list is confidential, subject to resolution of an open issue. In our view, the Assessor could reasonably believe persons would be deterred from requesting removal from the website search-by-name function if doing so put them on a public list. Indeed, the Assessor's legacy website promised confidentiality and numerous owners sought removal from the list in 2018 upon learning it may be publicized.

We reverse the district court on that issue. The open issue, which was neither decided by the Board or the district court nor briefed by both sides on appeal, is who falls "outside of government" within the meaning of section 22.7(18). We remand the case for a determination of that issue.

### I. Background Facts and Proceedings.

On March 27, 2017, members of the *Des Moines Register* editorial board met with Polk County officials about upcoming tax assessments. They also discussed the Assessor's electronic database of real property records and the ability for property owners to request that their names be removed from the website's search-by-name function. After the meeting, Clark Kauffman, then a *Des Moines Register* reporter, exchanged emails with Randy Ripperger, the Polk County Assessor, who said that "[t]he number of people on our name search disable list is 2,166."[1] Kauffman asked Ripperger to let him see the list of the property owners who had asked to be removed from the search-by-name function, or instead, the property owner's written requests, whichever was easier to produce. Ripperger denied Kauffman's request on the grounds that the information sought is confidential under Iowa Code section 22.7(18).

The Assessor's core mission is to assess the value of taxable real property within the county to determine the amount of property taxes owed to local government entities, including the county, municipalities, and school districts. Physical records of property ownership and assessed values are available for

---

[1]Ripperger later testified that there are approximately 2,100 properties on the disabled name list and 3,540 property owner names on the list.

inspection at the Assessor's office during business hours. The Assessor also maintains an electronic database to allow the public 24/7 access to its records. Property owners may request that their name be disabled from "the name search function for that name and parcel on the internet." The request can be made by the property owner or by a third party acting for the property owner. Once the request is processed, the name search function is disabled for all names associated with a parcel and a person cannot find that parcel by remotely searching any of the property owners' names, including those who personally did not make the request. The Assessor has honored all requests to have names disabled from the name search function.

The real property records remain available for public inspection through other means. Persons may phone the Assessor's office to ask about property owned by someone on the disabled name list, and the information is provided. Anyone may visit the Assessor's office during business hours to examine the records or use the computer in the office to find records by a property owner's name—even if the property owner's name was on the disabled name list. And persons can remotely search the electronic database by address and thereby get the names of property owners on the disabled name list.

Two decades ago, the *Des Moines Register* published a news story by its reporter Bert Dalmer about the Assessor's policy allowing requests for removal from the search-by-name function. The Assessor disclosed a list of 490 people who made such requests. Dalmer's article published some of their names, including police officers, judges, and state officials. The Assessor's office

subsequently changed its disclosure policy, and since 2002 has informed property owners their requests would be kept confidential. The Assessor's legacy website promised confidentiality:

> In order to address the concerns of those who do not want us to make it that easy for someone to find where they live, we have decided to disable the name search capability for an individual upon written request. *These requests will be considered confidential.* The names of the owners will remain on the property record but simply will not appear in an attempt to search the files by name. Those who wish to avail themselves of this option are reminded that there are several private search services that can be utilized to locate individuals. Also the request should be made for a specific parcel and, if the parcel changes by virtue of a consolidation of two parcels or division of an existing parcel, a new request must be submitted. The requests must be signed and made in writing.

(Emphasis added.) In practice, the office accepts requests in writing, in person, or by phone, and does not keep copies of requests after each one is processed.

In 2017, Kauffman argued to Ripperger (who was not serving as Assessor in 2000) that the past practice of disclosing such names showed the list is not confidential. Ripperger responded that the Assessor's policy since 2002 has been to keep the names confidential under Iowa Code section 22.7(18). Ripperger then consulted with two county attorneys who were not on the disabled name list, and both opined that the names were confidential under section 22.7(18). Ripperger denied Kaufmann's request for the list of names based on that statute, but agreed to preserve a copy of the disabled name list as it existed in 2017.[2]

---

[2]The list the Assessor preserved in 2017 is comprised of all property owner names that are disabled—not just the individuals who made the request. The list also includes the property address and date of the request. The Assessor testified three or four people in his office were on the preserved list.

On April 16, 2017, Kaufmann made a formal complaint with the Board alleging Ripperger was violating state law by refusing to provide "the list of 2,166 property owners who had filed written requests with the county asking that their names be pulled from the assessor's web site search engine." The Board's executive director investigated and found probable cause for the alleged violation. The Board issued a probable cause order on January 18, 2018. The Board initiated a contested case proceeding with an administrative law judge (ALJ) to preside pursuant to Iowa Code section 17A.11.

On November 15, the parties appeared for a prehearing conference during a regular Board meeting. The Board granted Ripperger's request to allow the parties to pursue informal settlement negotiations. After the Board voted, it took a short break before resuming the meeting to discuss other matters. The Assessor's attorneys left at that time, but Ripperger remained on the meeting's conference call. During the break, Board members continued to discuss whether the disabled name list is a public record and responsive to Kauffman's request, whether any decision would be limited to Polk County, and other aspects of the case. An audio recording of the meeting was submitted as part of the record. While it is difficult to hear the multiple conversations on the recording, the Board's executive director may have participated. On March 20, 2019, Ripperger filed a motion to disqualify the Board because of the alleged ex parte communications and asked the Governor's office to appoint a substitute decision-maker to review the ALJ's proposed decision or make the ALJ the final

decision-maker. The ALJ responded that she lacked the authority to disqualify a Board member.

The ALJ held a contested case hearing on March 29. The Board called Kauffman as a witness and submitted exhibits. Kauffman testified that he sought the disabled name list to determine who opts in to the policy and find out if developers, landlords, or slumlords are included. Neither he nor any other witness identified any other reason disclosure of the list was in the public interest. Ripperger testified that following media coverage of this case, many property owners responded by seeking removal from the list. Ripperger elaborated:

> That following week my office received numerous phone calls from people that were on the list that wanted their name removed from the list because they were afraid that their name and address would be published in The Des Moines Register.
>
> So to me that really reinforced the idea that they really expected confidentiality with their name being on our list.

He noted his staff talked to "quite a few" property owners and "had to tell them that 'we cannot remove your name from this list because we have to preserve this list while we go through this complaint process.' "

Ripperger called witnesses including a Des Moines Police Department sergeant, a former Iowa Supreme Court Justice, an Assistant Polk County Attorney, and a clinical psychologist. They testified they had their names disabled from the Assessor's name search function because of safety concerns attributable to their occupations. Specifically, the psychologist testified:

> And I think my primary concern is the risk for a client who is maybe manic or maybe anxious, wants to contact me, has left several

> voicemails, is calling me, can't contact me, pulls up the Assessor's website, finds my address, and shows up at my front door.
>
> Clients in that state are not going to be safe, they're not going to be safe to be around my family, and that's what I'm primarily concerned with.

The witnesses explained that they did not want to make it easy for people to find where they lived, and that those who made the request thought their request would be confidential.

They appreciated that the disabled name list required disgruntled persons who sought addresses to appear in person at the Assessor's office or call during regular business hours, allowing time to cool off. The psychologist highlighted the impulsive tendencies of individuals in an anxious or manic state. She testified that those individuals are more likely to act impulsively if the information is easily accessible through a computer, as opposed to available only during regular business hours, because interacting with another person offers an opportunity for those individuals to calm down.

The witnesses raised concerns that publicizing the names would invite scrutiny or retaliation because the list could encourage someone to seek them out again. The psychologist noted her clients and social workers would also be concerned about their safety. The county attorney also raised concerns about crime victims and witnesses.

The ALJ issued a proposed decision on July 19, determining Ripperger committed an open records violation because the disabled name list is a public record and not a confidential "communication" under section 22.7(18). Ripperger appealed the proposed decision to the Board.

On November 21, after additional briefing and oral arguments, the Board adopted the ALJ's decision. The Board determined "the party claiming the exemption . . . bears the burden [of proof]" and the disabled name list "is not the kind of communication with government that section 22.7(18) is intended to protect." In addressing a separate injunction issue, the Board recognized there are some "legitimate safety concerns," but found "it is illogical to assume the vast majority of those with safety concerns would rather be easily found in the database than be merely listed among those who have opted out." The Board denied the Assessor's disqualification motion, finding the conversations never rose "to the level of 'ex parte communication' which would require the Board to disqualify itself."

Ripperger filed a petition for judicial review. The Board granted his request for a stay of its decision while this court action is pending. After additional briefing and oral argument, the district court, on June 3, 2020, affirmed the Board's final decision. The district court concluded even if the alleged ex parte conversation was improper, it did not require disqualification, and the Board correctly applied the burden of proof. The district court also concluded the disabled name list is not confidential even though it "necessarily includes a communication not required to be made by law," because the Board made a "logical assessment of the public safety concerns" when evaluating whether it was reasonable for the Assessor to determine "property owners would be deterred from making a request to be removed from the website search function if those property owners knew their names (as distinguished from their home address)

would be made public." The court downplayed the safety concerns over releasing the names of property owners on the list:

> The purpose for the Assessor's action is to prevent people from easily accessing an owner's home address from the search. Many of the people requesting the protection are police officers, judges, prosecutors, and public officials. These people are already known to the public (to various degrees) through their employment. The production of a list of their names does not raise appreciable public safety concerns. The claims made by other groups, such as victims and health care providers, are different because they did not choose a career in public service. However, their names are known to their abusers and patients, so it is unclear how their safety would be compromised by listing their name. For these reasons, the court agrees with the Board that the Assessor has not met its burden of proof to meet the exemption in section 22.7(18).

Ripperger appealed and we retained the case. On appeal, he argues the Board should have disqualified itself because members engaged in prejudicial ex parte communications, the Board has the burden of proof to demonstrate the disabled name list is not confidential under section 22.7(18), the disabled name list is not responsive to the reporter's request, the Board erroneously determined that section 22.7(18) does not apply, and the district court should have issued an injunction preventing disclosure under sections 22.8 and 23.11. The Board responds that disqualification was not warranted, its final decision was supported by substantial evidence and a rational interpretation of chapter 22, and the Assessor failed to prove grounds for an injunction.

**II. Standard of Review.**

"We review an agency's interpretation of a statute for errors at law unless the legislature has clearly vested interpretive authority in the agency." *Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 903 (Iowa 2021); *see also* Iowa Code § 17A.19(10)(*c*), (*l*). If an agency has been granted interpretive authority, "we will

reverse an agency's interpretation only if it is 'irrational, illogical, or wholly unjustifiable.'" *Calcaterra*, 965 N.W.2d at 903 (quoting *Renda v. Iowa C.R. Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010)). "The question of whether interpretive discretion has clearly been vested in an agency is easily resolved when the agency's enabling statute explicitly addresses the issue." *Renda*, 784 N.W.2d at 11.

The legislature expressly empowered the Board to "[a]dopt rules pursuant to chapter 17A calculated to implement, enforce, and *interpret* the requirements of chapters 21 and 22 and to implement any authority delegated to the board by this chapter." Iowa Code § 23.6(2) (emphasis added). The Board has not promulgated any rule interpreting section 22.7(18).[3] We therefore review rulings on statutory interpretation for correction of errors at law.

The Board is empowered to resolve disputes through a "contested case proceeding conducted according to the provisions of chapter 17A." Iowa Code § 23.6(4). The legislature thereby vested the Board with the authority to make factual findings and apply law to facts. "If an agency has been clearly vested with the authority to make factual findings," we "can only disturb those factual

---

[3]Some statutes grant interpretive authority without limiting the exercise of that authority to rulemaking. *See, e.g.*, Iowa Code § 256.9(16) (authorizing the director of the department of education to "interpret the school laws and rules relating to the school laws"). By contrast, the legislature has granted some boards narrower authority to promulgate rules interpreting the statute administered by the board. *See, e.g.*, Iowa Code § 147.76 ("The boards for the various [health-related] professions shall adopt all necessary and proper rules to administer and interpret this chapter and chapters 148 through 158, except chapter 148D."). Section 23.6(2) falls in this latter category. We have applied the more deferential standard of review when such a board exercised its authority by issuing on rule on point. *See, e.g.*, *Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 841–43 (Iowa 2013). As noted, the Iowa Public Information Board has issued no rule interpreting Iowa Code section 22.7(18).

findings if they are 'not supported by substantial evidence in the record . . . when that record is reviewed as a whole.' " *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) (quoting Iowa Code § 17A.19(10)(*f*)). "When an agency has been clearly vested with the authority to make factual determinations," it also has been vested with the authority to apply the law to those facts, and "a reviewing court may only disturb the agency's application of the law to the facts of the particular case if that application is 'irrational, illogical, or wholly unjustifiable.' " *Id.* (quoting Iowa Code § 17A.19(10)(*m*)).

### III. Analysis.

The dispositive issue is whether the disabled name list is confidential under Iowa Code section 22.7(18). Because we hold that Ripperger could reasonably believe disclosure would deter the communications at issue, reversal is required.

We begin our analysis by reiterating that chapter 22, the Open Records Act, is designed "to open the doors of government to public scrutiny [and] to prevent government from secreting its decision-making activities from the public, on whose behalf it is its duty to act." *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 229 (Iowa 2019) (alteration in original) (quoting *City of Riverdale v. Diercks*, 806 N.W.2d 643, 652 (Iowa 2011)). "The Act essentially gives all persons the right to examine public records . . . [but] then lists specific categories of records that must be kept confidential." *Id.* (omission and alternation in original) (quoting *ACLU Found. of Iowa, Inc. v. Recs. Custodian, Atl. Cmty. Sch. Dist.*, 818 N.W.2d 231, 233 (Iowa 2012)). "The general assembly [thereby] created and fixed the

limitations on disclosure." *Id.* (alteration in original) (quoting *Recs. Custodian, Atl. Cmty. Sch. Dist.*, 818 N.W.2d at 232). Against that familiar backdrop, we turn to the parties' dispute over the burden of proof.

**A. The Burden of Proof.** Ripperger contends the Board has the burden to prove the disabled name list is a public record and is *not* exempt under section 22.7(18). The Board argues that Ripperger has the burden to prove the statutory exemption applies. The Board brought this action as a contested case proceeding under Iowa Code chapter 23, which is silent as to the burden of proof. But this is an action to enforce chapter 22, which codifies a burden-shifting framework. We examine the statutes together to determine the burden of proof.

"The purpose of [chapter 23] is to provide an alternative means by which to secure compliance with and enforcement of the requirements of chapters 21 and 22 through the provision by the [Board] to all interested parties of an efficient, informal, and cost-effective process for resolving disputes." Iowa Code § 23.1. The Board has the authority to initiate contested case proceedings under chapter 17A. *Id.* § 23.10(3)(*a*). "Chapter 17A does not dictate how the burden of proof is allocated. That issue is determined by the legal authority under which the hearing is held." *Mich. Wis. Pipe Line Co. v. Iowa State Bd. of Tax Rev.*, 368 N.W.2d 187, 189 (Iowa 1985). Because we are reviewing an action to enforce chapter 22, we hold chapter 22 controls the burden of proof.

Iowa Code section 22.10(2) provides a shifting burden of proof:

> Once a party seeking judicial enforcement of this chapter demonstrates to the court that the defendant is subject to the requirements of this chapter, that the records in question are government records, and that the defendant refused to make those

> government records available for examination and copying by the plaintiff, the burden of going forward shall be on the defendant to demonstrate compliance with the requirements of this chapter.

Thus, the Board had the initial burden to prove the Assessor's disabled name list is a public record subject to chapter 22 that Ripperger refused to release. Then, the burden shifts to the Assessor to demonstrate compliance by showing the list is exempt from disclosure as confidential under section 22.7(18). "Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability." *Mitchell*, 926 N.W.2d at 229 (quoting *Diercks*, 806 N.W.2d at 652).[4] We agree with the Board and the district court rulings that placed the burden of proving the exemption on the Assessor once the Board established the list is a public record that Ripperger refused to disclose.

**B. The Status of the Disabled Name List Under Chapter 22.** Both the Board and the district court concluded the disabled name list is a public record. We agree. The Assessor stores the list electronically and the Open Records Act applies to electronic records, stating that "[a] public record shall not be withheld from the public because it is combined with data processing software" and "[a] government body shall not acquire any electronic data processing system for the storage, manipulation, or retrieval of public records that would impair the government body's ability to permit the examination of a public record and the

---

[4]Our decision is further supported by the well-established legal proposition that "[o]rdinarily, the burden of proof on an issue is upon the party who would suffer loss if the issue were not established." Iowa R. App. P. 6.904(3)(*e*); *see In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018) (applying rule 6.904(3)(*e*) to hold the state has the burden to prove grounds for termination of parental rights and the parents have the burden to prove an exception to termination).

copying of a public record in either written or electronic form." Iowa Code § 22.3A(2)(*a*)–(*b*). The Assessor acknowledges that the disabled name list "was information that [he] could extrapolate from [his] database." We determine that the disabled name list is a public record subject to chapter 22. The Assessor denied Kauffman access to the list and bears the burden to show the list is exempt from disclosure.

" 'There is a presumption in favor of disclosure' and 'a liberal policy in favor of access to public records.' " *Mitchell*, 926 N.W.2d at 229 (quoting *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012)). But as to records exempt under section 22.7, "[t]he legislature has performed its own balancing and made the policy choice to protect such records categorically." *Id.* at 234; *see also City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895, 897 (Iowa 1988) ("Notwithstanding the spirit of disclosure evidenced by [chapter 22], the legislature has denoted numerous areas where confidentiality is to be maintained. In controversies such as the present one [involving section 22.7(18)], it is not the responsibility of this court to balance the competing policy interests. The balancing of those interests is the province of the legislature . . . .").

The Assessor argues the disabled name list is confidential under section 22.7(18). We begin with the text of this statute:

> The following public records shall be kept confidential, unless otherwise ordered by a court, by the lawful custodian of the records, or by another person duly authorized to release such information:
>
> . . . .
>
> 18. Communications not required by law, rule, procedure, or contract that are made to a government body or to any of its

employees by identified persons outside of government, to the extent that the government body receiving those communications from such persons outside of government could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination.

Iowa Code § 22.7(18).[5]

The legislature enacted section 22.7(18) "to permit public agencies to keep confidential a broad category of useful incoming communications which might not be forthcoming if subject to public disclosure." *Press Club*, 421 N.W.2d at 898. Section 22.7(18) "is broadly inclusive" and "mechanical application of a 'narrow' construction rule does not aid in the ascertainment of the legislature's intent." *Id.* at 897. We have applied section 22.7(18) to keep confidential employment applications for the position of a city manager, *id.* at 896, 899, and communications related to an investigation of an elementary school principal, *Des Moines Indep. Cmty. Sch. Dist. Pub. Recs. v. Des Moines Reg. & Trib. Co.*, 487 N.W.2d 666, 667, 670 (Iowa 1992). Both involved useful incoming communications which could be deterred by public disclosure. *Id.* at 670 ("A public agency often conducts investigations by interviewing people who are not a part of the agency. In order to do so effectively the agency must be able to provide for confidentiality."); *Press Club*, 421 N.W.2d at 898 ("In viewing the potential category of solicited communications which might be received by public agencies and for which they may wish to maintain confidentiality, employment

---

[5]There are three exclusions to the exemption in section 22.7(18) that "relate to (a) consent of the communicating party, (b) information which may be disclosed without identifying its source, and (c) information surrounding the occurrence of a crime." *Press Club*, 421 N.W.2d at 898; *see* Iowa Code § 22.7(18) (*a*)–(*c*). These exclusions are not at issue in this appeal.

applications come immediately to mind."). Presumably some of those job applicants would have thought twice about applying if doing so put them on a public list that could be seen by their current employer, and some parents would have been reluctant to criticize their school principal if their names were shared.

The Board in its final decision erroneously rejected Ripperger's claimed exemption under section 22.7(18) on grounds that the list itself was not a "communication" under that provision because it was created by the Assessor from separate communications by or on behalf of property owners. That determination was illogical and erroneous as a matter of law. The disabled name list is itself a compilation of communications to the Assessor from or on behalf of property owners requesting removal from the public website's search-by-name function. We hold that the disabled name list constitutes a "communication" within the meaning of section 22.7(18). In our view, if the underlying communications are confidential, the cloak of confidentiality can extend to a list of those making confidential requests. A contrary holding would lead to absurd results, such as making public a list of job applicants whose individual applications are confidential. *Cf. Milligan v. Ottumwa Police Dep't*, 937 N.W.2d 97, 102, 109 (Iowa 2020) (holding chapter 22 did not require disclosure of lists of names of drivers who had or had not been issued automatic traffic enforcement citations, reasoning that "production of license-plate-and-name combinations could be used to facilitate stalking—exactly the situation the [federal Driver's Privacy Protection Act] was enacted to prevent").

The Assessor easily meets several other requirements for confidentiality under section 22.7(18). Communications requesting removal from the name search function were "not required by law" because property owners can choose whether to request removal. *See Press Club,* 421 N.W.2d at 898 ("The candidates were not required to submit these applications because they were not required to apply for the job."). The parties agree that the Polk County Assessor's office is a "government body" within the meaning of section 22.7(18).

Some persons on the list were privately employed or former government employees at the time of their communications requesting removal from the name search function. They clearly are "persons outside of government" within the meaning of section 22.7(18). But what about persons who were employed by Polk County Assessor's office at the time of their request? Or any Polk County employee? Or city, state, or federal employees, or employees of another county? And what if the privately employed spouse of a government employee made the request? "[A] public employee has a substantial privacy interest in his or her address that outweighs the public's interest in disclosure, unless the information is necessary to open the government's actions to the light of public scrutiny." *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 47 (Iowa 1999). During the contested case proceedings, Ripperger argued requests by police officers, judges, or others employed by any federal, state, or local government are made in their personal capacity to mask the address of their personal residence, and therefore their communications qualify for confidentiality. The Board argued that no employee of any state, local, or federal agency is a person "outside of government"

entitled to protection under this statute. *Cf. Des Moines Indep. Cmty. Sch. Dist. Pub. Recs.*, 487 N.W.2d at 670 (protecting communications with persons not employed by the school district because they "are not a part of the agency" with custody of the records and by implication indicating the confidentiality extends to communications with employees of other government agencies).

The "outside of government" issue was thinly briefed below, and the ALJ did not reach that issue, nor did the Board's decision. The district court ruled against Ripperger on other grounds, without deciding this issue. The Board's appellate brief is silent on this issue. We consider the issue waived and decline to reach it in this appeal. *See Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 498 (Iowa 2019) (holding appellee waived alternative ground to affirm summary judgment in its favor when the issue was only minimally briefed below, was not decided by the district court, and the appellee did not argue the issue on appeal); *Kragnes v. City of Des Moines*, 810 N.W.2d 492, 507 n.12 (Iowa 2012) (determining appellee waived argument on appeal by failing to cite authority); *see also* Iowa R. App. P. 6.903(2)(*g*)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."), 6.903(3) (appellee's "brief shall conform to the requirements of rule 6.903(2)" with exceptions inapplicable here). A supreme court is "a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). Because this issue was not decided by the district court, we exercise our discretion to allow the Board to raise the issue on remand.

In our view, the dispositive issue is whether Ripperger "could reasonably believe" that publicizing the disabled name list would discourage property

owners from requesting removal from the search-by-name function. *See* Iowa Code § 22.7(18). This is an objective test, from the perspective of the record custodian, not the Board or district court. The district court and Board each erred by substituting its judgment for that of the record custodian. The partial dissent makes the same mistake.

We reiterate that "[i]t is the legislative goal to permit public agencies to keep confidential a *broad* category of useful incoming communications [under section 22.7(18)] which might not be forthcoming if subject to public disclosure." *Des Moines Indep. Cmty. Sch. Dist. Pub. Recs.*, 487 N.W.2d at 670 (emphasis added) (quoting *Press Club*, 421 N.W.2d at 898). Communications requesting removal from the Assessor's search-by-name function are useful to promote public safety, especially for those in risky occupations or victims of domestic abuse who want to make it harder for potential assailants to locate their home addresses. When, as here, the record custodian could reasonably believe disclosure of the list would deter such communications, that determination should be upheld, not second-guessed, even if others could reasonably disagree with the custodian.[6]

---

[6]Insurance bad-faith law offers parallels. "[W]here an objectively reasonable basis for denial of a claim *actually* exists, the insurer cannot be held liable for bad faith as a matter of law." *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 465 (Iowa 2017) (quoting *Bellville v. Farm Bureau Mut. Ins.*, 702 N.W.2d 468, 473 (Iowa 2005)). "[C]ourts and juries do not weigh the conflicting evidence that was before the insurer; they decide *whether evidence existed* to justify denial of the claim." *Id.* (alteration in original) (quoting *Bellville*, 702 N.W.2d at 474). "In many cases, a directed verdict or summary judgment for the insurer dismissing the bad-faith claim may be appropriate because *some* evidence existed to justify its denial as a matter of law." *Id.*

Similarly, courts reviewing a custodian's determination under Iowa Code section 22.7(18) should not independently decide whether the communications at issue would be deterred by disclosure, but rather should decide whether some evidence existed to support the custodian's belief.

Ripperger concluded that fewer people would request removal from the search-by-name function if doing so placed them on a public list. We agree with his determination for several reasons. First, the list is comprised of property owners who sought greater practical anonymity or privacy, many with good reason, including police officers, prosecutors, and judges, who offered compelling testimony of reasons to fear people they arrested, prosecuted, or sentenced might attack them at home. Naming them publicly could put a target on their back, and as the psychologist testified, publicizing the list would invite unwanted scrutiny from potential perpetrators. Stalking victims who moved away to escape could reasonably fear disclosing the list would alert their stalkers if they live in Polk County. The ALJ cited the testimony of five witnesses to find "[m]any believed that publicizing their names among those who had opted-out of the search function would call attention to them and further jeopardize their safety."[7] That factual finding, adopted by the Board, is supported by substantial evidence and binding on appeal. *Burton*, 813 N.W.2d at 256.

Second, when the *Des Moines Register* reported that the list of names might be disclosed as a result of this litigation, many owners sought to be removed from the list to avoid the spotlight. People effectively voted with their feet, thereby demonstrating the feared chilling effect of disclosure was real.

---

[7]The legislature recently enacted additional name search protections for current and former peace officers, other law enforcement employees, and prosecutors and judges, as well as victims of stalking, domestic abuse, and human trafficking. 2021 Iowa Acts ch. 183, §§ 1–8 (to be codified at Iowa Code §§ 9E.1, .2(6)(*a*), .3(1)(*b*)(1)(a), .3(1)(*e*), .7(4A); *id.* § 22.10(3)(*b*)(2); *id.* § 331.604(3)(*f*); *id.* § 622.10(9)(*a*)–(*b*) (2022)). That enactment became effective July 1, 2021. The parties agree the enactment does not apply retroactively and is not at issue in this appeal.

Third, the Assessor's website promised that their requests would be kept confidential, consistent with section 22.7(18). Citizens should be able to rely on their local government's lawful promise to keep such communications confidential.[8] But we emphasize that government officials cannot shield public documents from examination merely by promising confidentiality for communications that *otherwise* fall outside section 22.7(18).

Importantly, for purposes of our standard of review, the Board did not purport to "interpret" the term "could reasonably believe" in section 22.7(18) nor would we give deference to any interpretive authority for such common words. *See Calcaterra*, 965 N.W.2d at 903 (holding the Iowa Board of Medicine lacked interpretive authority over the term "privileged and confidential" in Iowa Code section 272C.6(4)(*a*)). And the Board made no factual finding (or application of law to fact) under section 22.7(18) that Ripperger could *not* reasonably believe those communications would be deterred by publicizing the list. The Board's

---

[8]A familiar example is the anonymity or confidentiality promised to citizens contacting Crime Stopper hotlines. For example, the West Des Moines Police Department promises confidentiality for callers to its hotline. *Crime Tips*, City of W. Des Moines, https://www.wdm.iowa.gov/government/police/online-police-services/crime-tips [https://perma.cc/5YZR-JU85] (last visited Dec. 13, 2021).

Presumably publicizing the names of callers would break that promise and deter reports of suspicious activity. Courts have upheld such government promises of confidentiality. *See, e.g.*, *Rimmer v. Holder*, 700 F.3d 246, 261, 264 (6th Cir. 2012) (affirming summary judgment dismissing a Freedom of Information Act (FOIA) claim, noting that "both the FBI and the individuals calling the Crime Stoppers hotline intended that the callers' identities remain undisclosed at the time of the calls"); *Ortiz v. Dep't of Health & Hum. Servs.*, 874 F. Supp. 570, 574 (S.D.N.Y. 1995), *aff'd.*, 70 F.3d 729 (2d Cir. 1995) (upholding FOIA exemption claim based in part on implied assurance of confidentiality for communications to agency's fraud detection hotline); *see also* Iowa Code § 22.7(5) (exemption for police investigatory reports); *Iowa ex rel. Shanahan v. Iowa Dist. Ct.*, 356 N.W.2d 523, 529 (Iowa 1984) (noting confidentiality "encourage[s] persons to come forward with information which might be used to solve crimes and deter criminal activity").

final decision stated: "Although we recognize the legitimate safety concerns among some categories of home owners, it is illogical to assume the vast majority of those with safety concerns would rather be easily found in the database than be merely listed among those who have opted out." The district court quoted that sentence out of context and misapplied it to reject Ripperger's claimed exemption under section 22.7(18). The Board did not make that statement about section 22.7(18). Rather the Board had moved on to address sections 22.8 and 23.11, which allow injunctive relief on proof by clear and convincing evidence that disclosure is not in the public interest and irreparable harm would result from publicizing the list, a much steeper climb for Ripperger. *See* Iowa Code § 22.8(1), (3); *id.* § 23.11. That showing is not required under section 22.7(18). We do not reach the injunction issue.

Ripperger, on this record, satisfied the far easier showing under section 22.7(18) to establish that he (not the Board or district court) "could reasonably believe" publicizing the list would deter requests for removal from the name search function. We hold the disabled name list of communications from persons outside of government is a confidential record exempt from disclosure under section 22.7(18), and we reverse the district court on that ground. We affirm without opinion the district court's well-reasoned ruling that Ripperger was not entitled to disqualify the Board. Iowa R. App. P. 6.1203(*d*).

## IV. Conclusion.

For those reasons, we reverse the district court ruling and remand the case to the district court for an order remanding the case to the Board to decide the

"outside of government" issue, and further proceedings consistent with this opinion.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., and Oxley, J., join this opinion. Mansfield, J., files an opinion concurring in part and dissenting in part. Appel, McDonald, and McDermott, JJ., take no part.

#20–0902, *Polk Cnty. Assessor v. Iowa Pub. Information Bd.*

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part. I agree with the majority's affirmance of the district court on the disqualification issue and with its determination that we cannot resolve the "outside of government" issue without a remand to the agency. However, I do not think it is actually necessary to reach the "outside of government" issue and would simply affirm the district court. In my view, the majority opinion fails to give proper deference to the agency whose interpretation it is reviewing; the majority's interpretation would be implausible even if no deference were required.

**I. The Majority Uses the Wrong Standard of Review.**

The majority has applied the wrong standard of review. The Iowa Administrative Procedure Act establishes two standards of review for agency legal interpretations. *See* Iowa Code § 17A.19(10)(*l*)–(*m*) (2017). The more deferential one applies to agency "interpretation of a provision of law whose interpretation has clearly been vested by a provision of law in the discretion of the agency." *Id.* § 17A.19(10)(*l*).[9] In 2012, the general assembly established the Iowa Public Information Board (Board) and gave the Board authority to interpret Iowa Code chapter 22. *See* 2012 Iowa Acts ch. 1115 (codified at Iowa Code chs. 21–23 (2013)). Specifically, the 2012 legislation gives the Board authority to adopt rules

---

[9]Alternatively, we can treat the issue before us as one of "application of law to fact." *See* Iowa Code § 17A.19(10)(*m*). The relevant standard of review and the analysis would not change.

"interpret[ing] the requirements of chapters 21 and 22." *Id.* § 9(2) (codified at Iowa Code § 23.6(2) (2013)). That should settle the matter that we apply the more deferential standard of review.

The majority claims that standard applies only when the agency is engaging in rulemaking and not when it decides a contested case. But I'm not aware of any prior case drawing such a distinction, and the majority cites none. To the contrary, in *Iowa Medical Society v. Iowa Board of Nursing*, we characterized a grant of authority to issue interpretive rules as a grant of "interpretive authority." 831 N.W.2d 826, 827 (Iowa 2013). The agency involved in *Iowa Medical Society* had statutory authority to "adopt all necessary and proper rules to administer and interpret this chapter and chapters 148 through 158, except chapter 148D." Iowa Code § 147.76. That was deemed by our court to be "a grant of interpretive authority requir[ing] deferential review of the agency's interpretation of the statute and its application of law to fact." *Iowa Med. Soc'y*, 831 N.W.2d at 827.

As we said in *Renda v. Iowa Civil Rights Commission*, "The question of whether interpretive discretion has clearly been vested in an agency is easily resolved when the agency's enabling statute explicitly addresses the issue." 784 N.W.2d 8, 11 (Iowa 2010). Professor Bonfield put it this way, "It would be improper for a court to simply substitute, without any deference to the agency's view, the court's own view of the meaning of a statutory term that the General Assembly had clearly delegated to the discretion of any agency to elaborate . . . ." Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act (1998)*

*Chapter 17A, Code of Iowa (House File 667 As Adopted) Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 63 (1998).

Moreover, there are logical reasons to accord deference to the Board's interpretation of Iowa Code section 22.7(18). The Board receives hundreds of contacts and over one hundred formal complaints annually. It has assembled a body of experience to help it determine when a government body could "reasonably believe" that persons outside of government would be discouraged from making a particular communication if the communication were publicly available. Iowa Code § 22.7(18).

## II. The Board and the District Court Correctly Ruled that the Iowa Code Section 22.7(18) Exemption Does Not Apply.

Iowa Code section 22.7(18) exempts from public disclosure:

Communications not required by law, rule, procedure, or contract that are made to a government body or to any of its employees by identified persons outside of government, to the extent that the government body receiving those communications from such persons outside of government could reasonably believe that those persons would be discouraged from making them to that government body if they were available for general public examination.

This provision is meant to protect sensitive information like the identity of private citizens making confidential complaints about government employees and the identity of private citizens applying for government jobs. *See Des Moines Indep. Cmty. Sch. Dist. Pub. Recs. v. Des Moines Reg. & Trib. Co.*, 487 N.W.2d 666, 670–71 (Iowa 1992); *City of Sioux City v. Greater Sioux City Press Club*, 421 N.W.2d 895 (Iowa 1988). The fundamental question is whether the communication will only occur if it is kept confidential from the public.

I agree with the Board and the district court that the Polk County Assessor's position is "illogical." The communication here enables the citizen to avoid having their address searchable on the internet database. As both the Board and the district court concluded, it is "illogical to assume the vast majority of those with safety concerns would rather be easily found in the database than be merely listed among those who have opted out."[10]

The contrary position taken by my colleagues makes no sense to me. According to a majority of this court, victims, prosecutors, police officers, and judges who (1) don't want their home address disclosed on the internet would rather (2) have their home address disclosed on the internet than (3) appear on a list of people who don't want their home address disclosed on the internet. Really?

The majority relies on the following testimony from the County Assessor:

[A]fter the article about me being charged by the Public Information Board, when that came out in The Des Moines Register -- I think it came out on a Saturday.

That following week my office received numerous phone calls from people that were on the list that wanted their name removed from the list because they were afraid that their name and address would be published in The Des Moines Register.

I find the County Assessor's testimony unpersuasive, as did the Board and the district court. Among other things, this testimony is hearsay, "numerous" is not quantified, and the testimony is irrelevant because we are only talking about

---

[10]The majority is correct that the Board made this finding with respect to an argument raised under Iowa Code section 22.8, not section 22.7(18). However, the finding addresses the critical issue under section 22.7(18).

a list of *names*, not a list of names and addresses. Most importantly, the underlying legal standard we have to apply is an objective one—i.e., "reasonably believe." Iowa Code § 22.7(18).

The majority contends that by being identified on a list of people who asked to be removed from the database, a person might call attention to themselves and "put a target on their back." That seems overstated to me, but regardless it is not the relevant issue. The relevant issue under Iowa Code section 22.7(18) is whether the person would rather have their address searchable on the internet or be listed as someone who asked to have their address not searchable on the internet. The statute requires us (or, more accurately, the Board) to balance those specific alternatives, not to weigh the overall public policy benefits of keeping the list confidential.

The majority fails to mention that the County Assessor's searchable internet database serves legitimate public policies. The County Assessor himself acknowledges that the database was meant to "increase transparency." For example, it allows members of the public, who regularly pay their property taxes, to find out more easily if their representatives in government are also paying their property taxes. It allows property owners, who are assessed every two years, to obtain reassurance that those with power and influence or an inside connection are being assessed similarly.

The list requested in this litigation would also serve legitimate public purposes. It may ferret out commercial property developers who asked to be on the list—not because of a safety concern—but simply because they preferred to

limit their transparency to the public. That's something the public may want to know. The Open Records Act doesn't exist just to uncover fraudulent or illegal conduct, but also to bring to light the need for *different* laws and policies. *See Iowa Film Prod. Servs. v. Iowa Dep't of Econ. Dev.*, 818 N.W.2d 207, 228 (Iowa 2012).[11]

The broader concerns about safety that overhang this case are legitimate, but as the majority points out they are being addressed by recent legislation. *See* 2021 Iowa Acts ch. 183, §§ 1–8 (to be codified at Iowa Code §§ 9E.1, .2(6)(*a*), .3(1)(*b*)(1)(a), .3(1)(*e*), .7(4A); *id.* § 22.10(3)(*b*)(2); *id.* § 331.604(3)(*f*); *id.* § 622.10(9)(*a*)–(*b*) (2022)). Our job is to interpret the law, giving appropriate deference to the views of the agency.[12]

**III. Conclusion.**

"[T]he policy of this chapter [is] that free and open examination of public records is generally in the public interest even though such examination may cause inconvenience or embarrassment to public officials or others." Iowa Code § 22.8(3). For the reasons stated, I respectfully dissent in part and would affirm the district court's order in its entirety.

---

[11]As Michael Kinsley has famously said, "[T]he scandal isn't what's illegal, the scandal is what's legal." Michael Kinsley, *Psst! Inside Information! It's the Scandal—and the Norm*, Wash. Post (June 5, 1986), https://www.washingtonpost.com/archive/politics/1986/06/05/psst-inside-informationits-the-scandal-and-the-norm/852f8471-66d8-4595-9083-6ab052218605/ [https://perma.cc/95L4-TUBM].

[12]The majority also notes that the County Assessor promised people who asked to be removed from the database that they would not have their identities disclosed. But the County Assessor does not get to unilaterally establish state law through his own promises.